UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

In re: Randall D. Johnson and                       Case No. 23-30757-KLP
       Tabitha Q. Johnson,                           Chapter 13
           Debtors.

Joshua Deaver,
         Plaintiff,

v.                                                                       Adv. Pro. No. 23-03022-KLP

Randall D. Johnson and
Tabitha Q. Johnson
         Defendants.

## MEMORANDUM OPINION

Randall D. Johnson and Tabitha Q. Johnson (jointly, the "Debtors" or the "Defendants") filed their chapter 13 bankruptcy case on March 6, 2023. On May 17, 2023, Joshua Deaver (the "Plaintiff") filed a single-count complaint (the "Complaint") initiating the instant Adversary Proceeding (the "Adversary Proceeding") against the Debtors. The Plaintiff seeks a determination of the dischargeability of a debt he claims the Defendants owe him (the "Debt"). The Defendants have filed a motion to dismiss the Adversary Proceeding (the "Motion to Dismiss") for failure to state a claim, which motion is currently before the Court.

In the Complaint, the Plaintiff alleges that the Defendants engaged in tortious activity towards him, willfully, maliciously, and with the intent of causing him harm. He then alleges a series of events that he asserts entitle him to a judgment of nondischargeability against the Debtors.

1

The Complaint does not seek a monetary judgment against the Debtors but only a determination that the claims the Plaintiff has against them are nondischargeable under § 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(6).[1] Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Complaint relies solely on § 523(a)(6) as the basis for the claim of nondischargeability. In his prayer for relief, the Plaintiff further requests that the Court allow him to proceed with litigation against the Debtors in state court, a request he has also made by motion (the "Motion for Relief") in the Debtors' main case, Case No. 23-30757-KLP.

*Background.* On May 15, the Plaintiff filed an unsecured claim in the amount of $850,000 (the Claim") in the Debtors' chapter 13 case. Attached to the Claim were summonses from a lawsuit filed by the Plaintiff against the Defendants in the Circuit Court of Waynesboro, Virginia.

On May 16, 2023, the Debtors filed an objection to the Claim (the "Objection"), arguing that it was baseless and frivolous. The Plaintiff did not respond to the Objection. On June 21, 2023, after expiration of the required thirty-day period to respond to the Objection, the Court entered an order disallowing the Claim. To date, the Plaintiff has taken no action in response to the disallowance of the Claim.

On May 1, 2023, the Plaintiff filed the Motion for Relief, in which he seeks permission to proceed with litigation against the Debtors in state court. A ruling on

---

[1] Unless otherwise noted, all references to code sections are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

the Motion for Relief has been deferred pending adjudication of the Motion to Dismiss.

*Facts alleged.* In the Complaint, the Plaintiff states that the Debt allegedly owed to him arises from "the Debtors' willful and malicious injury to [the Plaintiff], specifically the malicious prosecution and defamation committed by Debtors, including their participation in a conspiracy to effect the same." Complaint ¶ 5, ECF 1. The Plaintiff states that Debtor Tabitha Johnson ("Mrs. Johnson"), who was married at the time, engaged in a consensual extramarital relationship with him. After he ended the relationship, the Debtors, along with their friends Caitlin and DJ Payne (the "Paynes")[2] whom the Debtors enlisted to "get" the Plaintiff, undertook "a concerted, successful effort to have [his] employment terminated" and to cause the Plaintiff to be criminally charged. Complaint ¶ 11. More specifically, the Plaintiff claims that the Debtors intentionally injured him by knowingly making false statements in support of the criminal charges and making defamatory statements to his employer, Edward D. Jones and Co., causing him to be fired. It is significant that nowhere in the Complaint is there an allegation that the Defendants caused, or that the Plaintiff suffered, a physical or bodily injury.

The facts alleged by the Plaintiff are long and complex; what follows is a summary of those facts. The relationship between Plaintiff and Mrs. Johnson ran from July 2019 to September 2020, when the Plaintiff decided to end the relationship. Complaint ¶ 7. Thereafter, Mrs. Johnson repeatedly asked the

---

[2] The Paynes are not parties to the Adversary Proceeding.

3

Plaintiff to reconsider his decision. Upon discovering the relationship between Mrs. Johnson and the Plaintiff, Debtor Randall Johnson ("Mr. Johnson") contacted the Plaintiff as well, alternating between expressing forgiveness and anger. During this time, Mrs. Johnson continued to contact the Plaintiff, even visiting his office and asking for their relationship to be resumed. During this same period, Mr. Johnson twice parked his vehicle in front of the Debtors' home. Complaint ¶¶ 14-17. Upon being asked why he was there, he responded that his wife needed closure and "she won't stop until she ends things on her terms." Complaint ¶ 17.

At the end of October of 2020, Mr. Johnson again visited the Plaintiff's home, this time while intoxicated, and demanded that the Plaintiff come outside and fight him. The Plaintiff reported the incident to the police and took out a protective order against Mr. Johnson. Over the next four to six weeks, there were multiple texts between and among the Plaintiff and his wife, the Debtors, and the Paynes. Complaint ¶ 26.

On December 19, 2020, the Debtors and the Paynes went to the Plaintiff's home and began "egging" it, followed up by a shouted threat from Mr. Johnson that he would kill the Plaintiff. On December 20, the Plaintiff obtained protective orders against Mr. Johnson and Mrs. Payne and swore out a warrant against them for defacing his property. On December 21, Mr. Johnson sent an email to the Plaintiff's employer, stating that the Plaintiff had had an affair with Mrs. Johnson and making allegations as to the Plaintiff's treatment of other women in his office. On December 22, Mr. Johnson emailed the Plaintiff's father-in-law, asserting the

4

Plaintiff hired an assistant who was friendly with Mrs. Johnson solely to facilitate his affair with her. Complaint ¶¶ 27-32.

On December 29, 2020, Caitlin Payne swore out a warrant against the Plaintiff, claiming that he assaulted and/or battered her; he was served with the warrant on January 7, 2021. On January 14, the Plaintiff's employment was terminated on the grounds that he had lost the trust of senior management. On February 25, the Commonwealth of Virginia *nolle prossed* the assault and battery charge against the Plaintiff. Complaint ¶¶ 35-41. However, when he arrived home from court, the Plaintiff was greeted by an investigator for the City of Waynesboro police department, inquiring about allegations received from two women claiming that he committed sexual battery and rape against them.

On March 31, Plaintiff learned that there were warrants out for his arrest and turned himself in. Two charges were brought against him by the Commonwealth, based on complaints made by Caitlin Payne. A third charge, for sexual battery, was made by Mrs. Johnson directly. Complaint ¶¶ 44-45. That charge was reported to FINRA[3] and appeared on BrokerCheck, a searchable database, meaning that "any potential client searching Deaver's name was informed of the pending criminal charge." Complaint ¶ 46. Plaintiff further alleges that Mrs. Johnson called Freedom Street Partners, the Plaintiff's new employer, and notified

---

[3] FINRA, the Financial Industry Regulatory Authority, is a "government-authorized not-for-profit organization that oversees U.S. broker-dealers." Finra.org/about. The Court takes judicial notice of this information.

it of the criminal complaint, in an effort to have the Plaintiff's employment terminated. Complaint ¶ 49.

The Plaintiff alleges that the warrants sworn out by Mrs. Johnson and Caitlin Payne were without probable cause "as both Tabitha and Caitlin had actual knowledge that Deaver had not engaged in any criminal conduct." Complaint ¶ 56. The three charges against the Plaintiff were dismissed by the general district court on May 11, 2021, but his new employer continued to receive false, disparaging emails about the Plaintiff and his actions. The Plaintiff believes that those emails were sent by Mrs. Johnson. ¶¶ 50-53.

The Plaintiff alleges that the malicious prosecution instituted by the Defendants damaged his reputation in the community and caused him to incur significant legal costs. He further alleges that the Defendants defamed him, causing him "pain, embarrassment, humiliation, mental suffering, injury to reputation and out of pocket losses for attorney's fees and costs in addition to the income lost from his job at Edward Jones." Complaint ¶ 72.

*The Motion to Dismiss*. In the Motion to Dismiss, the Debtors urge that § 523(a)(6) does not apply in chapter 13 cases. Section 1328(a) of the Bankruptcy Code lists the debts that are nondischargeable in a chapter 13 case. That section does not include a discharge exception for damages from "willful and malicious injury by the debtor to another entity," even though such damages would be nondischargeable in a chapter 7 case. Therefore, the Debtors, who filed bankruptcy

6

under Chapter 13, assert that the Complaint, based solely upon §523(a)(6), must be dismissed.

In opposition, the Plaintiff argues that § 1328(a)(4) of the Bankruptcy Code, 11 U.S.C. § 1328(a)(4), provides an exception to discharge for "personal injury" claims. He claims that the Complaint, which accuses the Debtors of (1) retribution and conspiracy, (2) malicious prosecution, and (3) defamation per se, satisfies the exception to discharge set forth in §1328(a)(4).

## JURISDICTION

This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).[4] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334, and venue in this Court is proper under 28 U.S.C. § 1409.

## DISCUSSION

*Motions to Dismiss*. A motion to dismiss under Federal Civil Procedure Rule 12(b)(6),[5] made applicable by Bankruptcy Rule 7012(b),[6] challenges the legal sufficiency of a complaint, *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), and the Court must assume that the facts alleged are true. *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000); *see*

---

[4] 28 U.S.C. § 157(b)(2) provides in part that:
    (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
      (2) Core proceedings include, but are not limited to--
        (I) determinations as to the dischargeability of particular debts; . . .
[5] Fed. R. Civ. P. 12(b)(6).
[6] Fed. R. Bankr. P. 7012(b).

7

*Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See MacKethan v. Peat, Marwick, Mitchell & Co.*, 439 F. Supp. 1090, 1094 (E.D. Va. 1977) ("the complaint is to be liberally construed in favor of the plaintiff").

The United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (emphasis added) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this plausibility standard, a plaintiff must demonstrate more than a "sheer possibility that a defendant has acted unlawfully." *Id*. Instead, a plaintiff must articulate facts that, when accepted as true, state a claim upon which relief can be granted, and a plaintiff cannot rely upon "labels and conclusions . . . [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d at 193 (citing *Iqbal,* 129 S. Ct. at 1950). "[A] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss" but simply requires allegations sufficient "enough to raise a right to relief above the speculative level." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012) (citing *Twombly,* 550 U.S. at 555).

*Analysis.* In chapter 13 cases, a debtor's discharge is granted pursuant to § 1328(a), which provides that:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan . . . , the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>
> (1) provided for under section 1322(b)(5);
>
> (2) the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);
>
> (3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or
>
> (4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

Section 1328(a) provides what has been referred to as the "superdischarge" of chapter 13. When a chapter 13 plan is successfully completed, the discharge granted to the debtor is broader than that granted in a chapter 7 case. Applicable here, subparagraph (a)(2) of § 1328 includes specified § 523 exceptions to discharge, providing that debts of the kind addressed "in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)" are excepted from a chapter 13 discharge. Notably absent from this paragraph is subsection (6), the provision upon which the Complaint is based.

Predictably, the Debtors note that § 1328 does not include a debt under § 523(a)(6) as an exception to discharge. Since this is a chapter 13 case and the

9

Debtors are seeking a discharge pursuant to § 1328, the Debtors argue that this adversary proceeding must therefore be dismissed.

As the Debtors contend, § 523(a)(6) is not applicable to chapter 13 cases and thus the Complaint, as stated, should be dismissed. For that reason, the Motion to Dismiss will be granted and the Complaint will be dismissed.

The Plaintiff argues in his responsive memorandum, ECF 10, that § 1328(a)(4) applies to render the Debt nondischargeable. Section 1328(a)(4) includes a discharge exception "for restitution, or damages, awarded in a civil action against the Debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." Although the Plaintiff has not moved to amend the Complaint to include an allegation that the Debt should be excepted from discharge pursuant to § 1328(a)(4), the Court must determine whether, upon dismissal, the Plaintiff should be granted leave to amend the Complaint to include a § 1328(a)(4) count.

"Amendments to pleadings are to be liberally granted. Bankruptcy Rule 7015 (incorporating Fed. R. Civ. P. 15) ('The Court should freely give leave when justice so requires.'). However, a motion to amend should be denied where the proposed amendment would be futile." *Uplinger v. U.S. Investigation Servs. (In re Uplinger)*, Adv. Pro. No. 11-01341, 2012 WL 194621, at *4 (Bankr. E.D. Va. 2012) (citing *Foman v. Davis*, 371 U.S. 178 (1962)*; Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011)).

Section 523(a)(6) is broader than § 1328(a)(4), as it excepts debts for "willful and malicious injury . . . to another entity" while § 1328(a)(4) confines the exception to damages resulting from willful or malicious injury . . . *that caused personal injury to an individual.*" (emphasis added). If an alleged injury does not cause "personal injury to an individual," the debt arising therefrom is dischargeable in a chapter 13 case. Thus, the Court must assess whether the facts, as alleged by the Plaintiff, demonstrate a "personal injury" to the Plaintiff.

*Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348 (E.D. Va. 2006), informs the Court on the question of what qualifies as a "personal injury" under the Bankruptcy Code. There, the court addressed 28 U.S.C. § 157(b)(2)(B) and (b)(4), which except "personal injury tort" claims from the mandatory abstention requirement of 28 U.S.C. § 1334(c). In *Massey Energy*, the plaintiffs sought to recover damages for business conspiracy and defamation, arguing that the "personal injury tort" exception of 28 U.S.C. § 157(b)(2)(B) included damages incurred from defamation and an alleged business conspiracy. The district court disagreed, finding that "the personal injury exception under § 157 is limited to a narrow range of claims that involve an actual physical injury. Had § 157 simply said 'tort,' then this Court would likely conclude to the contrary, since defamation is considered a tort in this jurisdiction. However, it is the opinion of this Court that Congress intended to limit the claims fitting the exception by introducing the narrow, modifying language 'personal injury.'" 351 B.R. at 351.

11

There are three approaches to interpreting a requirement of "personal injury" in the bankruptcy context. The approaches are set forth in depth in the recent case of *Byrnes v. Byrnes (In re Byrnes)*, 638 B.R. 821 (Bankr. D.N.M. 2022):

> Lower courts in the Second Circuit and elsewhere have adopted different approaches to determine whether a particular claim constitutes a "personal injury tort" claim. [*In re Residential Capital, LLC,* 536 B.R. 566, 571–75 (Bankr. S.D.N.Y. 2015)] (collecting cases). The **"narrow view"** requires a trauma or bodily injury or psychiatric impairment beyond mere shame or humiliation to meet the definition of "personal injury tort." *Id.* at 571–72 (citations omitted); *accord Perino v. Cohen (In re Cohen),* 107 B.R. 453, 455 (S.D.N.Y. 1989) .... The **broad view** interprets "personal injury tort" to "embrace[ ] a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and include[ ] damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering." *Residential Capital*, 536 B.R. at 572 (quoting *Boyer v. Balanoff (In re Boyer)*, 93 B.R. 313, 317–18 (Bankr. N.D.N.Y. 1988) and collecting cases). Finally, under the **intermediate, "hybrid" approach**, a bankruptcy court may adjudicate claims bearing the "earmarks of a financial, business or property tort claim, or a contract claim" even where those claims might appear to be "personal injury torts" under the broad view. *Id.* (quoting *Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*, 281 B.R. 154, 161 (Bankr. D. Conn. 2002) and citing, *inter alia*, *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 908–13 (Bankr. D. Nev. 2008)).

*Id.* at 826-27 (emphasis added).

In *Byrnes*, the court adopted the narrow approach, agreeing with the court's holding in *Massey Energy*. In reaching its conclusion, the court engaged in extensive analysis, listing nine separate supporting factors:

> First, . . . [b]ecause "personal injury tort" is next to "wrongful death," the terms should be construed together as dealing with similar types of injuries.
>
> Second, the legislative history shows that Congress meant "personal injury tort" to refer to torts similar to "claims arising from automobile accidents," i.e., a "narrow range of claims.

12

Third, consideration of the personal injury attorney lobbying effort after *Johns-Manville* leads to the conclusion that the personal injury torts referred to in § 157(b)(5) were the "traditional, plain-meaning types."

Fourth, there is no constitutional problem with bankruptcy courts hearing tort claims, so a broad interpretation of "personal injury tort" is not required to satisfy *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Fifth, a narrow interpretation of "personal injury tort" avoids unduly burdening the District Court with trial of bankruptcy-related claims, which burden Congress could not have intended.

Sixth, Black's Law Dictionary's *first* definition of personal injury tort is "any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury." Black's Law Dictionary (10th ed.). . . .

Seventh . . . the "broad" interpretation "essentially equates 'personal injury tort' with any tort. ..." The broad interpretation reads "personal injury" out of § 157(b)(5), contrary to the rule that statutes should be construed so that, "if it can be prevented, no clause, sentence, or word is superfluous, void, or insignificant."

Eighth, it is true that 11 U.S.C. § 522(d)(11) refers to "personal bodily injury" while 28 U.S.C. § 157(b)(5) refers to "personal injury." That difference does not outweigh the reasons favoring a narrow interpretation. Further, the sections were adopted six years apart, addressed different issues, and are in different titles of the United States Code. Finally, Black's Law Dictionary (first definition) equates the two terms.

Ninth, . . . the hybrid approach lacks "support in the words of the relevant statutes, any canon of construction or the legislative history, and is unworkable...." 571 B.R. at 623. The hybrid approach is not an attempt to construe the statute as much as a judicially crafted compromise between two alternative constructions. The compromise is unsatisfactory. Whatever Congress intended when it used the term "personal injury tort," it wasn't the hybrid interpretation.

*Id.* at 829-30.

While *Byrnes* was a case interpreting the "personal injury tort" provision of 28 U.S.C. § 157, courts adopt the same approach in analyzing § 1328's "personal injury" exception to discharge. For example, *Sales v. Bailey (In re Bailey)*, 555 BR. 557 (Bankr. N.D. Miss. 2016), outlines the same three approaches – narrow, broad, and hybrid (or middle) – when addressing the "personal injury" exception of § 1328(c)(4). In *Bailey*, the Court adopted the so-called "narrow approach," the same approach taken by the district court in *Massey Energy* and *Byrnes*. Other courts have also adopted the "narrow approach" memorialized in *Massey Energy*. See, e.g., *Vinci v. Town of Carmel (In re Vinci),* 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989); *Priest v. Interco, Inc. (In re Interco),* 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991); and *Perino v. Cohen (In re Cohen),* 107 B.R. 453, 455 (Bankr .S.D.N.Y. 1989).

In this district, the rule of *Massey Energy* prevails. To except a debt under § 1328(a)(4), there must be an "actual physical injury." Here, the Plaintiff has alleged no actual physical injury and has therefore failed to allege facts necessary to satisfy the requirements of § 1328(a)(4). Even if the Court were to allow the Plaintiff to amend the Complaint to include a § 1328(a)(4) count, viewing the facts as pled under the most favorable light as required by Rule 12(b)(6), the Plaintiff cannot satisfy the requirements of § 1328(a)(4). Thus, allowing the Plaintiff to amend the Complaint to include a § 1328(a)(4) count would be futile. Having sustained no physical injuries, he would be unable to carry his burden of establishing a valid § 1328(a)(4) claim. Therefore, the Court will dismiss the Complaint without leave to amend.

As to the Plaintiff's motion for relief from the automatic stay, the Court finds that it would serve no purpose to allow continued litigation over the Plaintiff's claim. The Plaintiff's claim has been disallowed in the Debtors' bankruptcy case, and the Plaintiff has failed in his efforts to have the claim determined to be nondischargeable. Therefore, the motion for relief from the automatic stay will be DENIED.

A separate order will be entered.

Signed: February 12, 2024

                                            /s/ Keith L. Phillips
                                      United States Bankruptcy Judge

Entered on Docket: February 13, 2024

Copies to:

David W Thomas
Michie Hamlett Lowry Rasmussen & Tweel
310 4th Street NE
2nd Floor
Charlottesville, VA 22902

David G. Browne
Spiro & Browne, PLC
2400 Old Brick Road
Glen Allen, VA 23060

David Spiro
Spiro & Browne, PLC
2400 Old Brick Road
Glen Allen, VA 23060

Randall D Johnson
12324 Walkes Quarter Road
Chesterfield, VA 23838

Tabitha Q Johnson
12324 Walkes Quarter Road
Chesterfield, VA 23838

Carl M. Bates
P. O. Box 1819
Richmond, VA 23218